**Harold Michael MOORE, Appellant**

v.

**The STATE of Texas, State**

**NO. 02-15-00402-CR, NO. 02-15-00403-CR**

Court of Appeals of Texas,
Fort Worth.

DELIVERED: August 11, 2016

Discretionary Review Granted
December 7, 2016

---

William R. Biggs, William R. Biggs, PLLC, Fort Worth, TX, for Appellant.

Sharen Wilson, Criminal, District Attorney; Debra A. Windsor, Chief of the Postconviction Division; Mark Kratovil, Richard Alpert, William Vassar, Assistant Criminal District Attorneys for Tarrant County, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

## OPINION

ANNE GARDNER, JUSTICE

Appellant Harold Michael Moore appeals (1) a conviction for DWI Felony-Repetition in which the trial court also made a deadly weapon finding in trial court cause number 1394673D (appellate court cause number 02-15-00402-CR) and (2) an order revoking his community supervision for a 2006 conviction for DWI Felony-Repetition in trial court cause number 0961033D (appellate court cause number 02-15-00403-CR). The trial court assessed, respectively, concurrent sentences of eighteen years' and ten years' confinement. In one issue, Appellant contends that the evidence is insufficient to support the deadly weapon finding in the judgment for the new offense. We agree and delete the deadly weapon finding. As

modified, we affirm the judgment in cause number 02-14-00402-CR. In cause number 02-14-00403-CR, in the absence of any complaint, we affirm that judgment.

## Background

Appellant entered an open plea of guilty to the new offense and pled not true to the deadly weapon allegation. Regarding the petition to revoke his community supervision on the 2006 conviction, Appellant pled true to the allegations that he committed a new offense and that he operated a vehicle without an Interlock device in violation of his community supervision. The trial court then heard witnesses on punishment.

## Evidence

On November 17, 2014, around 6:30 p.m., when it was already dark, Appellant, driving a Mercedes SUV, rear-ended the second of two cars sitting at a stop light, causing the second car, a BMW 328i, to strike the first car, an SUV, in line. The impact propelled the first car into the intersection. From that point, the first car proceeded past the intersection, pulled over to the shoulder, and turned on its hazard lights.

The driver of the second car, S.K., did not see Appellant or Appellant's vehicle until after the accident. At the time of the accident, both S.K. and her fourteen-year-old daughter, who was also in the car, were talking to S.K.'s husband on a cell phone via a Bluetooth device. S.K. maintained that her foot was on the brake when she was struck and that her foot never left the brake until after her vehicle stopped moving. She described the impact as "huge." The airbags, however, never deployed. She estimated approximately four to five feet separated her car and the car in front of her.

After the collision, S.K. said she saw Appellant's vehicle trying to back up a little. At some point she saw Appellant was out of his car. An unidentified woman, who approached S.K. to inquire if she was okay, told S.K. that Appellant appeared to have been drinking and smelled of alcohol.

After the accident, S.K.'s husband arrived and took her and their daughter to an emergency clinic where they were examined. S.K. said no injuries were found, just bruises, scratches, and soreness. S.K. did not miss any work and had no protracted loss or impairment of the function of any bodily member or organ. Her daughter was very upset and confused, "had a couple of breakdowns at school where she was crying and some teachers talked with her," and did not sleep well. Although her daughter had some emotional problems, her daughter did not suffer the loss or impairment of a bodily member or organ because of the accident.

S.K. testified that an adjuster from her insurance company determined that her car was totaled. Photographs of her car show damage to both the rear and front of her car, primarily to the trunk and hood. The photographs, however, provide no insight on why her insurance company decided to declare her vehicle a total loss, and no one testified about why that particular damage rendered her vehicle a total loss.

Appellant was the driver of the Mercedes SUV that rear-ended S.K.'s car. The forensic toxicology results showed he had a blood-alcohol level of 0.27.

## Appellant's Issue

◼ In his brief, Appellant divides his sole issue attacking the deadly weapon finding into two parts. First, he asserts the State failed to prove that he used his vehicle in a manner that was reckless or dangerous. Second, he argues the State failed to prove that other people were put

in actual danger of death or serious bodily injury. We address both contentions.[1]

### I. Standard of Review

 The test for determining whether the evidence is sufficient to support a criminal conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim. App.2005). A deadly weapon is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp 2016). A deadly weapon is also "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B). To hold evidence sufficient to sustain a deadly weapon finding, the evidence must show that (1) the object meets the statutory definition of a deadly weapon, (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based, and (3) other people were put in actual danger of death or serious bodily injury. *See Drichas*, 175 S.W.3d at 798; *see also Brister v. State*, 449 S.W.3d 490, 494 (Tex.Crim.App. 2014) (quoting *Sierra v. State*, 280 S.W.3d 250, 256–57 (Tex.Crim.App.2009), for prop-osition that vehicle must pose an actual danger of death or serious bodily injury).[2]

 Objects that are not usually considered dangerous weapons may become so depending on the manner in which they are used during the commission of an offense. *Drichas*, 175 S.W.3d at 798. A motor vehicle "is not a deadly weapon *per se.*" *Brister*, 449 S.W.3d at 494. A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. *Id.*; *Drichas*, 175 S.W.3d at 798. Specific intent to use a motor vehicle as a deadly weapon is not required. *Drichas*, 175 S.W.3d at 798. The danger posed to motorists must be actual and not simply hypothetical. *Id.* at 799. "Actual danger" refers to the risk of "death or serious bodily injury." *Brister*, 449 S.W.3d at 494. "Capability is evaluated based on the circumstances that existed at the time of the offense." *Drichas*, 175 S.W.3d at 799. "An automobile can be a deadly weapon if it is driven so as to endanger lives." *Cates v. State*, 102 S.W.3d 735, 738 (Tex.Crim.App.2003). The focus is on whether Appellant drove in a reckless or dangerous manner. *See Sierra*, 280 S.W.3d at 255–56. Merely driving while intoxicated, without more, does not establish that the vehicle is a deadly weapon. *See Brister*, 449 S.W.3d at 495.

---

1. The deadly weapon finding makes Appellant's conviction a "3g" offense. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2016). The deadly weapon finding adversely affects eligibility for parole. *Compare* Tex. Gov't Code Ann. § 508.145(d)(1) (West Supp. 2016) (providing that an inmate with an affirmative finding under section 3g(a)(2) of article 42.12 of the code of criminal procedure is "not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less"), *with id.* § 508.145(f) (West Supp. 2016) (providing that an inmate "is eligible for release on parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less"). Appellant is seventy years old.

2. Our review shows the quote the court in *Brister* relied upon is not from *Sierra* but is actually from a subsequent case that cited *Sierra* for that proposition. *See Roppolo v. State*, No. 13–11–00437–CR, 2012 WL 3598736, at *2 (Tex.App.—Corpus Christi Aug. 22, 2012, pet. ref'd) (mem. op, not designated for publication) (citing *Sierra*, 280 S.W.3d at 256–57). Regardless, *Brister* approves the substance of the quote.

## II. The *Cook* factors.

▮ In *Cook v. State*, we wrote that when determining whether the evidence supports a deadly weapon finding in cases involving motor vehicles, courts conduct a two-part test. 328 S.W.3d 95, 100 (Tex. App.–Fort Worth 2010, pet. ref'd). First, we "evaluate the manner in which the defendant used the motor vehicle during the felony." *Id.* (citing *Sierra*, 280 S.W.3d at 255). Second, we "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.* (citing *Sierra*, 280 S.W.3d at 255).

▮ When examining the manner in which the defendant operated a vehicle, we evaluate whether the driving was reckless or dangerous. *Id.* (citing *Sierra*, 280 S.W.3d at 255). In *Cook*, we listed five factors to consider: (1) intoxication, (2) speeding, (3) disregarding traffic signs and signals, (4) driving erratically, and (5) failure to control the vehicle. *Id.*

### A. Intoxication

When considering the manner in which a defendant operated a vehicle, the first factor listed in *Cook* was whether the defendant was intoxicated. *Id.* If intoxication alone decided the issue, then every time an intoxicated defendant drove a vehicle, the vehicle would be a deadly weapon. This is precisely the argument that the Texas Court of Criminal Appeals rejected in *Brister* in 2014 several years after we decided *Cook*. *See Brister*, 449 S.W.3d at 495. *Brister* effectively overruled that portion of our *Cook* analysis. "Intoxicated" de-

scribes the condition in which Appellant drove his vehicle. It does not describe the manner in which he drove his vehicle. His condition would probably impact his manner, but for purposes of the deadly weapon finding, *Brister* instructs us to focus on his manner.[3]

### B. Speeding

Another of the factors *Cook* listed was speeding. 328 S.W.3d at 100. There was no evidence on how fast Appellant was driving or what the speed limit was at that location. In *Cook*, an accident reconstruction investigator testified both as to the approximate speed the defendant was going (thirty-five to thirty-nine miles per hour) and the posted speed limit where the accident occurred (thirty miles per hour). *Id.* at 98. There was no evidence of what kind of speed was necessary, given the size and weight of Appellant's SUV and S.K.'s BMW, to cause the damages her BMW sustained. If the speed limit was thirty-five miles per hour, there was no evidence clarifying whether an SUV traveling thirty-five miles per hour could cause both the force of the collision and the extent of damage sustained by S.K.'s BMW. Without more information, there was no basis upon which to attribute speeding as one of the causes of the accident.

### C. Disregard of Traffic Signs and Signals

Another factor in *Cook* was whether the defendant disregarded traffic signs and signals. *Id.* at 100. *Cook* cited *Drichas* for that proposition. *Id.* The defendant in *Drichas* led police on a fifteen-mile high-speed

---

**3.** The forensic toxicology results showed Appellant had a blood-alcohol level of 0.27. However, there was no evidence regarding how a person with a blood alcohol level of 0.27 would drive. The unidentified woman who approached S.K. at the scene said Appellant appeared to have been drinking and smelled of alcohol. There was no mention of slurred speech, lack of coordination, or clumsy movements. S.K.'s husband came to the scene and spoke to Appellant, but S.K.'s husband did not testify regarding what he observed. In any event, we are persuaded that *Brister* directs us to look for the manner, not the condition, in which a defendant drove the vehicle.

chase during which he "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side of the highway." *Drichas*, 175 S.W.3d at 797. *Drichas* involved innumerable infractions, and *Cook* cited *Drichas* for infractions—in the plural. *See Cook*, 328 S.W.3d at 100. In contrast, Appellant had a single infraction. We are not prepared to say a single failure to regard a traffic sign or signal, without more information, constitutes a reckless manner of the defendant's use of the vehicle. The single failure might have been the product of criminal negligence as distinguished from recklessness. Whether the single failure was dangerous depends on the second factor—whether that particular failure was capable of causing death or serious bodily injury.

## D. Erratic Driving

The fourth factor articulated in *Cook* was whether the defendant drove erratically. *Id.* "Erratic" implies, at the very least, more than one instance of questionable behavior. It implies a course of driving that is out of the ordinary. *Erratic* Webster's Third New International Dictionary (2002) ("1 a: having no fixed course . . . 3 a: characterized by lack of consistency, regularity, or uniformity."). We have a rear-end collision and nothing more. We have no evidence of how Appellant was driving before the accident. We have no evidence that the collision was the last in a series of driving irregularities.

## E. Failure to Control the Vehicle

The fifth and final factor set out in *Cook* was the defendant's failure to control the vehicle. *Cook*, 328 S.W.3d at 100. In *Sierra*, the defendant told an officer he saw the car he struck but failed to stop, and other evidence showed the defendant failed to stop notwithstanding having had an ample opportunity if he had been driving within the speed limit and given the distance between the two cars. *Sierra*, 280 S.W.3d at 256. This additional evidence suggested the defendant was speeding and failed to maintain control of his vehicle. *Id.* At trial, an officer testified "that an average, undistracted person reacting to the car's presence under these conditions and traveling at the posted speed limit of thirty-five miles per hour would be able to come to a complete stop within seventy-one feet of the car." *Id.* at 252. Similarly, in *Cook*, an accident reconstruction investigator testified that (1) the defendant was speeding, (2) the defendant's vehicle made no signs of braking (such as skid marks or uprooted grass on the lawn where the complainant was struck), (3) the defendant's explanation that she was trying to avoid another vehicle was not supported by the other evidence because she should have been able to stop had she applied her brakes, and (4) the defendant's speed precluded her from reacting to the presence of the complainant. *See Cook*, 328 S.W.3d at 98–99. Both *Sierra* and *Cook* had evidence from which the fact-finder could have concluded the accident was the product of recklessness as distinguished from criminal negligence. We have no such additional evidence.

## III. Reckless or Dangerous Manner

Appellant contends that the evidence fails to show that his vehicle met the definition of a deadly weapon because there was nothing to show "the manner of use" of the vehicle. Appellant maintains that the focus is on whether he drove in a reckless or dangerous manner. *See Sierra*, 280 S.W.3d at 255–56. Appellant argues that the record is silent on how he was driving his car before the accident.

The only evidence of how Appellant was driving was the accident itself. The question then becomes whether the accident itself would allow a rational trier of fact to find beyond a reasonable doubt that the accident would not have occurred but for Appellant's having driven his car in a reckless or dangerous manner. For the reasons given below, we hold that a rational trier of fact could not.

The offense of driving while intoxicated does not require a *mens rea*. *Brister*, 449 S.W.3d at 493 n. 3. The deadly weapon finding, however, requires a *mens rea* of reckless or, alternatively, "dangerous" conduct. *Sierra*, 280 S.W.3d at 255–56. We address reckless conduct first.

The Texas Penal Code recognizes four culpable mental states—intentional, knowing, reckless, and criminally negligent. Tex. Penal Code Ann. § 6.03 (West 2011). Regarding recklessness, the code provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c). Regarding criminal negligence, the code states:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d).

Without additional information, there is no rational basis for determining whether Appellant was driving recklessly or whether he was driving with criminal negligence. Similarly, the fact that an insurance company determined S.K.'s car was totaled is no help, because it could have been totaled as a result of reckless driving or it could have been totaled as a result of negligent driving. The damage to the car displayed in State's Exhibit 10, 11, and 12 is not helpful for the same reason. We know an accident occurred. No witness testified about how Appellant was driving before the accident occurred, and the fact that Appellant was intoxicated at the time of the accident does not render the vehicle a deadly weapon as a matter of law. *See Brister*, 449 S.W.3d at 495. Viewing the evidence in the light most favorable to the prosecution, there is no rational basis for finding beyond a reasonable doubt that the accident was the product of reckless driving rather than the product of criminally negligent driving. *See Drichas*, 175 S.W.3d at 798. "Inferences based on mere speculation . . . are insufficient to support a criminal conviction." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex.Crim.App.2015). Put another way, this is not a case where the fact-finder heard or saw evidence that Appellant was reckless and where we are being asked to second guess the fact-finder's determination. Rather, this is a case where the evidence showed Appellant might have been reckless or might have been criminally negligent, with no rational basis for deciding he was one or the other beyond a reasonable doubt. The accident, by itself, does not make that determination possible. We are not saying the State could

not have proven its case. We are saying in this instance the State did not prove its case.

■ If the evidence is insufficient to show Appellant drove in a reckless manner, the deadly weapon finding would still be proper if the evidence showed he drove in a dangerous manner. *See Sierra*, 280 S.W.3d at 255–56. "Dangerous" does not fall within the framework of the culpable mental states identified in the penal code. *See* Tex. Penal Code Ann. § 6.03. Whether Appellant drove in a dangerous manner, for analytical purposes, dovetails with the third element for determining whether an object qualifies as a deadly weapon—whether his use of a vehicle put other people in actual danger of death or serious bodily injury. *See Brister*, 449 S.W.3d at 494 (defining elements of a deadly weapon); *Drichas*, 175 S.W.3d at 798 (same). Regardless of how one defines "dangerous" under the first element, if others were not placed in "actual danger" under the third element, the object is not a deadly weapon. *See Brister*, 449 S.W.3d at 494 (defining elements of a deadly weapon); *Drichas*, 175 S.W.3d at 798 (same). Accordingly, we address whether Appellant drove in a dangerous manner with Appellant's argument that the evidence failed to prove that others were in any actual danger.

IV. Dangerous Manner and Actual Danger of Death or Serious Bodily Injury

Appellant contends that the evidence fails to establish that other people were put in actual danger of death or serious bodily injury. *See Brister*, 449 S.W.3d at 494. Appellant emphasizes that both S.K. and her daughter sustained only bruises, scratches, and general soreness. The focus is on actual danger and not hypothetical danger. *See Brister*, 449 S.W.3d at 494; *Drichas*, 175 S.W.3d at 797–98. And the "actual danger" must be to the risk of "death or serious bodily injury." *See Brister*, 449 S.W.3d at 494.

Although the evidence shows S.K. and her daughter were endangered, we hold there is no evidence showing that they were put in actual danger of death or serious bodily injury. "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code Ann. § 1.07(a)(46) (West Supp. 2016). The evidence shows that S.K. and her daughter never saw Appellant before the accident occurred, and they suffered only minor injuries. However forceful and sudden the impact was, the collision failed to cause the airbags to deploy. We do not have to speculate about what kind of danger S.K. and her daughter were exposed to. This was not a near-miss case. It was a direct-hit case. We know precisely the extent of danger they were exposed to because of the accident, and the extent of their injuries shows that the danger does not meet the definition of death or serious bodily injury. They experienced "bodily injury," which is defined as "physical pain, illness, or any impairment of physical condition." Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2016). Here, Appellant rear-ended another car at a stop light, and although the other car was totaled, the car's occupants themselves suffered only minor injuries. Viewing the evidence in the light most favorable to the prosecution, under these facts, there is no rational basis for finding beyond a reasonable doubt that the danger S.K. and her daughter were exposed to exceeded the injuries they actually experienced. *See Drichas*, 175 S.W.3d at 798. There is no evidence explaining the danger that was actually involved. There was no evidence from which to draw the conclusion that

S.K.'s and her daughter's minor injuries were the product of a miracle or—conversely—entirely predictable given the safety designs of S.K.'s BMW and other variables, such as the speed of Appellant's vehicle (which was never established). Arguments that the danger was greater and that the injuries could have been or should have been greater are speculation, and speculation is not proof beyond a reasonable doubt. *See Ramsey*, 473 S.W.3d at 809. Once again, we are not saying that the State could not have proven the risk of danger rose to the level of death or serious bodily injury. Rather, we are saying that the State failed to prove it in this case. It may well be that S.K.'s and her daughter's minor injuries were miraculous, but the evidence fails to explain why the actual danger exceeded the actual injuries.

There is no doubt that the failure to stop at a stop light can cause death. In *Tyra v. State*, the defendant drove his pickup into a motorcycle honoring a stop light and killed the motorcyclist. 897 S.W.2d 796, 805 (Tex.Crim.App.1995) (Clinton, J., dissenting). Those, however, are not our facts. We look at the circumstances that existed at the time of the offense. *See Brister*, 449 S.W.3d at 494.

V. State's Reliance on *Cook* and *Davis*

The State relies on *Cook*, 328 S.W.3d at 95, and *Davis v. State*, 964 S.W.2d 352 (Tex.App.–Fort Worth 1998, no pet.). Both cases are distinguishable.

### 1. Cook

In *Cook*, the defendant pled guilty to intoxication manslaughter. 328 S.W.3d at 97. The defendant drove over a curb and struck the complainant while he was mowing his yard, and both the complainant and his lawn mower ended up in the yard on the other side of the street. *Id.* at 97–98. The complainant later died. *Id.* at 98. An eyewitness testified to what he saw immediately before the accident, an accident reconstruction investigator testified, and the defendant herself testified. *Id.* at 98–99. The fact-finder had a plethora of evidence upon which to evaluate how the defendant drove her vehicle before the accident. In contrast, in Appellant's case, there was no eyewitness who testified about how Appellant had been driving before the accident, there was no accident reconstruction investigator who explained what the physical evidence revealed to him about the manner in which Appellant was driving or the extent of the actual danger S.K. and her daughter were exposed to, and Appellant himself did not testify. It is undisputed Appellant was intoxicated and driving, but simply driving while intoxicated is not enough to establish the vehicle was a deadly weapon. *See Brister*, 449 S.W.3d at 495. Although Appellant failed to stop, as discussed earlier, in the absence of any evidence shedding any light on how Appellant was driving before the accident, there is no way to determine beyond a reasonable doubt whether that failure was the product of recklessness or criminal negligence. Finally, in *Cook*, the complainant died, which undoubtedly simplified the question of whether the defendant drove her vehicle in a manner that placed other people in actual danger of death or serious bodily injury. *See Tyra*, 897 S.W.2d at 798 ("Our precedents establish that anything, including a motor vehicle, which is actually used to cause the death of a human being is a deadly weapon.... This is necessarily so because a thing which actually causes death is, by definition, 'capable of causing death.'"). In Appellant's case, the physical injuries were minor.

### 2. Davis

In *Davis*, a police officer "testified that [the defendant] weaved and drove in the oncoming lane of traffic four or five times,

and [the defendant] had to take 'evasive action' to avoid hitting another car in the oncoming lane." 964 S.W.2d at 354. From that evidence, the court concluded that the evidence was sufficient to support the finding that the vehicle was a deadly weapon. *Id. Davis* underscores the deficiency of the evidence in the State's case here. In *Davis*, the fact-finder had evidence describing the manner in which the defendant was driving the vehicle. We have no dispute with the proposition that someone who repeatedly drives into the oncoming lane of traffic—and does so even when there is an approaching vehicle in the oncoming lane of traffic such that the defendant had to take "evasive action"—is driving his vehicle in a manner that places other people in actual danger of death or serious bodily injury. In contrast to *Davis*, we have no evidence regarding the manner in which Appellant was driving his vehicle before the accident. Whether the accident was caused by recklessness or criminal negligence is ambiguous without any way to resolve that ambiguity in the absence of additional information. The scope of the danger is known—bodily injury, not death or serious bodily injury. Any other danger would be hypothetical based on facts not present here. In view of the lack of any evidence that Appellant was operating his vehicle in a reckless or dangerous manner when he rear-ended the BMW, as well as the lack of any evidence that his manner of use placed others in actual danger of death or serious bodily injury, there is legally insufficient evidence to support the deadly weapon finding against Appellant. To uphold the finding on this record would effectively be holding that evidence of a rear-end collision, by itself, establishes in every case that a vehicle was used as a deadly weapon.

### Conclusion

We sustain Appellant's sole issue, delete the deadly weapon finding from trial court cause number 1394673D (appellate court cause number 02-15-00402-CR) and, as modified, we affirm the judgment in that cause number.

Because Appellant has not raised any complaint in the companion appeal, we affirm the trial court's judgment in trial court cause number 0961033D (appellate court cause number 02-15-00403-CR).