

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00192-CR

_____

DOMINIC ISANDA MOMANYI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1813333

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Tarrant County jury convicted Dominic Isanda Momanyi of driving while intoxicated (DWI) – third or more, with a deadly weapon finding, and assessed a sentence of three years' imprisonment. *See* TEX. PENAL CODE ANN. § 49.09(b) (Supp.). On appeal, Momanyi argues that the evidence was legally insufficient to support the jury's finding of guilt, specifically, the deadly weapon finding.[1]

Because we find that sufficient evidence supports the jury's finding of Momanyi's guilt, we affirm the trial court's judgment.

## I.      Legally Sufficient Evidence Supports the Jury's Finding of Guilt

### A.      Standard of Review

"In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt." *Mayfield v. State*, 676 S.W.3d 244, 249 (Tex. App.—Fort Worth 2023, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017)). "This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (citing *Jackson*, 443 U.S. at 319; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021)). "We determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

in the light most favorable to the verdict." *Id.* (citing *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018)). "We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution." *Id.* (citing *Braughton*, 569 S.W.3d at 608).

"To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial." *Id.* (citing *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 249–50 (citing *Hammack*, 622 S.W.3d at 914). "The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations." *Id.* (citing *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021)).

Here, the State's indictment alleged that Momanyi was driving while intoxicated—third offense or more—and that Momanyi's vehicle was used as a deadly weapon during the commission of the offense. A person commits the offense of DWI if he "is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (Supp.). "An offense under Section 49.04 . . . is a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated . . . ." TEX. PENAL CODE ANN. § 49.09(b)(2).

## B.     The Evidence at Trial

The State called Garrett Hargrove, who witnessed a light-colored Mercedes driving on Highway 360 on the evening of December 25, 2023, in Grapevine. Hargrove was at his grandparents' house in Cedar Hill for a Christmas family dinner and was driving to his home around 9:30 or 10:00 at night. He saw a Mercedes swerving on the highway, "going from one lane on the far side all the way to the other in a matter of seconds" and "without any rhyme or reason." Hargrove also saw the Mercedes come to a near stop in the middle lane of the highway. The Mercedes was not traveling fast but, rather, extremely slow. He observed the Mercedes "almost hit someone else." Hargrove explained that there were other cars that were trying to pass the Mercedes but could not because of the swerving and stopping. Even though the Mercedes was traveling slow, other cars were traveling faster, and it was hard to react in time to get out of the way. He called 9-1-1, reported the situation to the police, and then continued to follow the Mercedes until it pulled over in an abandoned California Pizza Kitchen parking lot. Hargrove explained that he was nervous driving behind the Mercedes and was afraid to pass the vehicle because he did not believe he could do so safely.

Kristin Riewe, a police officer with the Grapevine Police Department, also testified at trial. On December 25, around 9:00 p.m., Riewe was on patrol with her supervisor when dispatch contacted her about an individual, who was possibly intoxicated, traveling north on Highway 360. The reporting person claimed that a vehicle was "driving erratically," not "maintain[ing] their lane," speeding up and slowing down, and "almost coming to a stop in the middle of the highway."

4

When Riewe arrived at the abandoned California Pizza Kitchen parking lot, she observed two vehicles, Momanyi's Mercedes and Hargrove's vehicle. She approached Momanyi's vehicle, opened the door, and spoke to him. Riewe observed that Momanyi had watery, bloodshot eyes and seemed confused. She also smelled alcohol on his breath when he spoke. When Momanyi got out of his vehicle, he almost fell, and Riewe had to help steady him. Initially, Momanyi denied having any alcohol to drink. However, when Riewe asked him a second time, Momanyi admitted to drinking one cup of Hennessy. At that point, Riewe believed that Momanyi had lost his mental faculties.

For those reasons, Riewe conducted standard field sobriety tests on Momanyi. Momanyi either did not pass the tests or was unable to complete them. Based on the results of the sobriety tests, the fact that he was unbalanced, and the scent of alcohol on his breath, Riewe concluded that Momanyi was intoxicated. After obtaining a warrant to draw Momanyi's blood, Riewe transported Momanyi to Baylor Grapevine Hospital for the blood draw. After the blood draw was completed, Riewe took the blood kit back to the evidence room, where it was placed into a refrigerated locker at the police department and sent off for testing.

Riewe admitted that she did not witness Momanyi driving that night. However, she did speak with Hargrove at the scene. There, Hargrove explained to her that Momanyi was not driving in his lane and that "his speed would fluctuate from high to - - down to 20 miles per hour." When Momanyi almost came to a complete stop on the highway, Hargrove contacted 9-1-1 to report the incident. Hargrove's statement to Riewe at the scene was consistent with his testimony at trial.

The jury viewed a recording that was taken from Riewe's body camera. The recording showed Momanyi attempting to perform field sobriety tests. Among other things, Momanyi was unstable on his feet and could not follow Riewe's instructions. In addition, the trial court admitted into evidence various 9-1-1 calls from other drivers who had witnessed Momanyi's erratic driving that evening.

Tempest Brooks, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Garland, conducted a variety of tests on Momanyi's blood to determine its alcohol concentration. Brooks then prepared a laboratory report, which showed that Momanyi's blood alcohol concentration was between .242 and .278, well over the legal alcohol limit of .08.

### C.    Analysis

Momanyi argues that the "evidence was legally insufficient" to prove that he used his vehicle in a manner that would "support a deadly weapon finding." He also argues that the State failed to prove that he operated his vehicle in a "reckless or dangerous" manner that placed someone else in "actual danger."

The Texas Penal Code defines "[d]eadly weapon" as "a firearm" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(A), (B) (Supp.). In *Moore v. State*, the court stated,

> To justify a deadly weapon finding . . . the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that "the manner" in which it was either used or intended to be used was "*capable*" of causing death or serious bodily injury.

*Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017) (quoting *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008)).

6

"[I]tems that are not deadly weapons *per se*" may be deemed "deadly weapons by [reason] of their *use* or *intended use*." *Hill v. State*, 913 S.W.2d 581, 582–83 (Tex. Crim. App. 1996). "A motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodily injury and therefore can be a deadly weapon." *Moore*, 520 S.W.3d at 908–09 (quoting *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (per curiam) (orig. proceeding)); *see Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009). "When assessing a defendant's manner of driving, we examine whether a defendant's driving was reckless or dangerous." *Couthren v. State*, 571 S.W.3d 786, 790 (Tex. Crim. App. 2019) (citing *Sierra*, 280 S.W.3d at 255)). To evaluate whether a person was driving a motor vehicle in a reckless or dangerous manner, appellate courts consider the following factors: "(1) intoxication; (2) speeding; (3) disregarding traffic signs and signals; (4) driving erratically; and (5) failure to control the vehicle." *Cook v. State*, 328 S.W.3d 95, 100 (Tex. App.—Fort Worth, 2010, pet. ref'd) (citations omitted).

In this case, Hargrove was so concerned for his own safety, and the safety of other drivers, that he contacted 9-1-1 after observing Momanyi driving erratically. Although Hargrove testified that Momanyi was not speeding, he did observe Momanyi's vehicle weaving in and out of traffic and then coming close to a stop in the middle of the highway. Hargrove also witnessed Momanyi's vehicle almost hit another vehicle. All of those things demonstrated Momanyi's lack of control over his vehicle. In addition, Hargrove testified that other drivers were unable to pass Momanyi's vehicle due to his erratic driving. Consequently, the evidence shows that other

motorists "were *actually* endangered." *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd).

Additionally, when Riewe came into contact with Momanyi in the parking lot, he had a strong odor of alcohol on his breath. After noting Momanyi's substantial problems performing field sobriety tests, Riewe opined that Momanyi no longer had his mental or physical faculties. Moreover, a blood draw confirmed that Momanyi's blood alcohol concentration was between .242 and .278, more than three times the legal limit.

Because legally sufficient evidence supports Momanyi's conviction for DWI, third or more, with a deadly weapon finding, we overrule Momanyi's sole point of error.

## II.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     March 3, 2025
Date Decided:       March 14, 2025

Do Not Publish