Harold Michael **MOORE**, Appellant

v.

**The STATE of Texas**

**NO. PD-1056-16**

Court of Criminal Appeals of Texas.

DELIVERED: June 7, 2017

ATTORNEYS FOR APPELLANT: William Biggs, William R. Biggs, PLLC, 115 W. 2nd St, Suite 202, Fort Worth, TX 76102.

ATTORNEYS FOR THE STATE: Mark C. Kratovil, Assistant Criminal District Attorney, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, TX 76196-0201.

## OPINION

Yeary, J., delivered the opinion of the Court in which Keller, P.J., and Hervey, Richardson and Keel, JJ., joined.

While driving in a state of intoxication, Appellant rear-ended another car that was stopped at a red light, causing the driver and passenger bodily injury, but not serious bodily injury. The trial court found that Appellant's SUV constituted a deadly weapon that he used in the course of committing felony DWI. The Fort Worth Court of Appeals reformed the judgment to delete the deadly weapon finding, holding that the evidence did not support it. *Moore v. State*, 508 S.W.3d 645, 655 (Tex. App.—Ft. Worth 2016). In its petition for discretionary review, the State now contends that the court of appeals failed to draw every reasonable inference from the evidence in support of the deadly weapon finding. We agree and will reinstate the deadly weapon finding.

## THE FACTS

In an open plea, Appellant pled guilty to the offense of driving while intoxicated, charged as a felony since he had been convicted a number of times previously for that offense.[1] His blood alcohol content shortly after his arrest was .27, almost three and a half times the legal threshold for intoxication. But he pled not true to the allegation that he used a deadly weapon in the course of the offense, and the trial court conducted a punishment hearing without a jury. Only one witness testified for the State, Shannon Koen.

Koen was idling in her 2011 BMW sedan, with her foot on the brake, four to five feet behind a white SUV, at a red light

---

1. Appellant, who was sixty-nine years old at the time of the instant offense, had been convicted a number of times for misdemeanor DWI offenses committed in the 1990s, and was on probation for a felony DWI committed in 2006.

on the three-lane service road of Highway 114, where it intersects with Dove Road. There were other cars in the vicinity as well, although Koen was not asked to estimate how many. Koen's fourteen-year-old daughter was also in the car with her. It was a Monday evening, between 6:20 and 6:30 p.m., and already dark.[2] After she had been idling for only "a few seconds or so" waiting for the red light to change, according to Koen, "all of a sudden, there was a huge impact and crash." Appellant's Mercedes SUV had struck Koen's car from behind, pushing it forward so that it struck the white SUV in front of her, in turn knocking the white SUV out into the intersection. The white SUV was able to proceed through the intersection, and it pulled over to the shoulder with its flashers activated. Koen's airbags never deployed, and nobody was seriously hurt; Koen and her daughter both suffered only a few bruises and scratches, and lingering soreness. But Koen's three-year-old BMW was later declared by an insurance adjuster to be a total loss. On cross-examination, Koen readily admitted that she had not seen Appellant coming before his car struck hers. She did not know whether he had been speeding, driving erratically, or failing to obey any other traffic signals before the accident.

### THE LAW

An automobile is not "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[.]" TEX. PENAL CODE § 1.07(a)(17)(A). But it may, "in the manner of its use or intended use [be] capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(B). In any felony offense in which it is "shown" that the defendant "used or exhibited [a] deadly weapon[,]" the trial court "shall" enter a deadly weapon finding in the judgment. TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2).[3] Such a deadly weapon finding impacts a convicted felon's eligibility for community supervision, parole, and mandatory supervision. Id.; TEX. GOV'T CODE §§ 508.145(d)(1), 508.149(a)(1), & 508.151(a)(2).

To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that "the manner" in which it was either used or intended to be used was *"capable"* of causing death or serious bodily injury. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008) (emphasis added). Nor does the plain language of the provision require that the actor actually intend death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Pruett v. State*, 510 S.W.3d 925, 928 (Tex. Crim. App. 2017). Our cases that address the question of when and how an automobile may constitute a deadly weapon under Section 1.07(a)(17)(B) appear to be consistent with these general principles.

In *Ex parte McKithan*, 838 S.W.2d 560 (Tex. Crim. App. 1992), we observed in the abstract that "[a] motor vehicle, in the manner of its use or intended use, is clearly capable of causing death or serious bodi-

---

**2.** Koen remembered that it was a Monday because her daughter was tutored every Monday for her upcoming ACT/SAT test between 5 and 6 p.m., and she had been taking her daughter home from a tutoring session.

**3.** Appellant pled guilty in October of 2015, more than a year before the effective date of the recent re-codification of Article 42.12 of the Code of Criminal Procedure in what is now Chapter 42A. *See* Acts 2015, 84th Leg., ch. 770, p. 2321, eff. Jan. 1, 2017. The 2017 re-codification repealed Article 42.12, but the Legislature expressly declared that no substantive change in the law was intended. *Id.*, §§ 3.01, 4.01, p. 2395.

ly injury and therefore can be a deadly weapon." *Id.* at 561. In *Tyra v. State*, 897 S.W.2d 796, 797 (Tex. Crim. App. 1995), the defendant was prosecuted for what we would now call intoxication manslaughter: accidentally or mistakenly causing a death by operating a motor vehicle while intoxicated.[4] He contended that a deadly weapon finding was not warranted because of a lack of evidence that he "actually intended to use an object in such a way as to cause serious bodily injury or death." *Id.* We rejected that contention, observing that "[t]he statute expressly includes in the definition of deadly weapons those things which are capable of causing death in the manner of their use, not just those things which are manifestly designed to cause death or which will cause death if used as intended." *Id.* at 799. We reached a similar conclusion in *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995), holding that "no intent to use the automobile as a weapon need be shown" in a case of involuntary manslaughter. Of course, the motor vehicles in both *Tyra* and *Walker* were obviously *capable* of causing death—because they *did*.

In *Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001), we confronted the question of whether an automobile may be found to constitute a deadly weapon in a felony DWI case in · which nobody was injured but the defendant's car "nearly hit another vehicle head-on and . . . a collision was avoided only because the other driver took evasive action." *Id.* at 132. We adopted the lower court's opinion as our own, which had held the evidence sufficient to support a deadly weapon finding in the absence of any evidence that either death or serious bodily injury had actually occurred. *Id.* The court of appeals had ob-

served, without attribution, that, "[t]o sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present." *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000). Because near-certain death or serious bodily injury was narrowly averted only because of the other driver's evasive action, we concluded (by adopting the lower court's opinion) that the near-collision sufficed to establish more than a merely hypothetical danger of death or serious bodily injury to another. ·

We took up *Mann*'s actual-danger requirement in earnest in *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003), and *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). *Cates* involved a prosecution for failing to stop and render aid after an accident. The defendant's truck struck a pedestrian on a rain-slicked curve in the road on a street in Houston. 102 S.W.3d at 736. We focused on the manner of the defendant's driving *after* the accident, since the "relevant time period" for determining whether he had used a deadly weapon in the course of committing the offense of failure to stop and render aid was "the time period after [the pedestrian] was hit." *Id.* at 738.We held that the evidence did not support a finding that the car in which the defendant left the scene was a deadly weapon, since there was no indication he was speeding, the truck obeyed a traffic light, it never left the roadway, and there was no other traffic on the road. *Id.* On these facts, we perceived no evidence of actual endangerment in the manner in which the defendant drove during the relevant period of time—after the pedestrian was struck. *Id.*

---

4. *See* Tex. Penal Code § 49.08(a) (it is an offense to operate a motor vehicle in a public place while intoxicated "and by reason of that intoxication cause[] the death of another by accident or mistake"). ·

In *Drichas*, the defendant was prosecuted for evading detention in a motor vehicle, a felony. 175 S.W.3d at 796. This time we found ample evidence to support a deadly weapon finding in that, in the "early morning hours" of the chase, the defendant "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side of the highway." *Id.* at 797. There was at least "'some' traffic ... present on the road during the chase." *Id.* We concluded that "the danger was real, ... particularly where [the defendant] drove on the wrong side of the highway." *Id.* at 798. And we reiterated that "[s]pecific intent to use a motor vehicle as a deadly weapon is not required." *Id.* (citing *McCain*, 22 S.W.3d at 503).

*Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009), and *Brister v. State*, 449 S.W.3d 490 (Tex. Crim. App. 2014), each involved a prosecution for felony DWI. In *Sierra*, the defendant T-boned another car that was pulling out of an apartment complex onto a four-lane roadway. 280 S.W.3d at 251. We observed that past cases had divided the automobile-as-a-deadly-weapon analysis "into two parts: first, we evaluate the manner in which the defendant used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id.* at 255. In evaluating the manner of use, we said, we have asked "whether a defendant's driving was reckless or dangerous during the commission of a felony." *Id.* We concluded that there was evidence of reckless or dangerous driving in that the defendant had been speeding, and had failed to apply his breaks or otherwise control his vehicle prior to the collision. *Id.* at 256. And because the driver of the broad-sided car was in fact seriously injured in the crash, the evidence established that the defendant's car was capable of causing such injury. *Id.*

By contrast, nobody was injured in *Brister*. The defendant was pulled over without incident by a police officer who had observed him cross once—but only once—over the yellow line into the on-coming lane on a two-lane road. 449 S.W.3d at 491. There were "[v]ery few, if any, cars on the roadway." *Id.* We upheld the lower court's determination that these bare facts were insufficient to establish that the defendant "caused another vehicle or person to be in actual danger." *Id.* Of course, *Brister* did not turn exclusively on the fact that nobody suffered actual death or serious bodily injury. Evidence that the defendant in *Brister* drove in a reckless or dangerous manner was skimpy, and the possibility that another motorist could have been hurt was slight. That said, we know from the holding in *Mann* that an automobile may be found to be a deadly weapon in a felony DWI case, even in the absence of any injury at all. The court of appeals' holding in the instant case nevertheless relied heavily on the fact that the injuries Appellant actually caused were relatively minor.

## THE COURT OF APPEALS' OPINION

The only issue Appellant raised in the court of appeals was the legal sufficiency of the evidence to support the trial court's finding that he used a deadly weapon in the commission of his felony DWI offense. Appellant argued (1) that the evidence failed to establish that the manner in which he had been driving before the accident was reckless or dangerous, and (2) that it also failed to demonstrate that anyone was ever placed in any genuine danger of death or serious bodily injury—that the danger was merely hypothetical, not actual. The court of appeals agreed on both counts.

## The Manner of Appellant's Use of the Car

The court of appeals analyzed the first question, whether the manner of Appellant's driving was reckless or dangerous, in accordance with the framework it had previously adopted in *Cook v. State*, 328 S.W.3d 95, 100 (Tex. App.—Fort Worth 2010, pet. ref'd). In *Cook*, the same court of appeals had identified five "factors" to consider: "(1) intoxication, (2) speeding, (3) disregarding traffic signs and signals, (4) driving erratically, and (5) failure to control the vehicle." *Moore*, 508 S.W.3d at 650 (citing *Cook*, 328 S.W.3d at 100). Addressing these factors one at a time, the court of appeals noted first that Appellant's intoxication, while evidence of his "condition" at the time of the offense, "does not describe the manner in which he drove his vehicle." *Id.* There was no evidence that Appellant was speeding, or expert testimony of how fast he would have to have been driving to cause the damage he did to the BMW and impel the white SUV into the intersection. *Id.* Although Appellant obviously disregarded the red light, the court of appeals emphasized that this was but "a single infraction." *Id.* at 651. "We are not prepared to say a single failure to regard a traffic sign or signal, without more information, constitutes a reckless manner of the defendant's use of the vehicle." *Id.* As for "erratic" driving, the court of appeals remarked that the word connotes a certain consistency of conduct, and that "[w]e have no evidence that the collision was the last in a series of driving irregularities." *Id.* And regarding Appellant's failure to control his vehicle, the court of appeals cited the paucity of testimony with respect to the contributing causes of the accident, noting a lack of evidence in this case "from which the fact-finder could have concluded the accident was the product of recklessness as distinguished from criminal negligence." *Id.*

Because, under *Sierra*, the manner of a defendant's use of his automobile may still support a deadly weapon finding if it was not just reckless, but, alternatively, "dangerous," the court of appeals turned briefly to that question. *Id.* at 653. Finding that its analysis of whether Appellant's driving was dangerous "dovetails" with the question of whether it actually put other people in danger of death or serious bodily injury, however, the court of appeals then simply proceeded to address Appellant's second argument: that the evidence failed to prove that he placed others in actual, as opposed to merely hypothetical, danger. *Id.*

## Actual Versus Hypothetical Danger

The court of appeals observed that "[t]here is no doubt that the failure to stop at a stop light can cause death." *Id.* at 654. "Those, however," the court of appeals maintained, "are not our facts." *Id.* The facts here showed that Koen and her daughter were indeed "endangered," in the court of appeals' view, but the evidence did not show they were ever put in danger of death or serious bodily injury. "Arguments that the danger was greater and that the injuries could have been or should have been greater are speculation," the court of appeals reasoned, "and speculation is not proof beyond a reasonable doubt." *Id.* "The scope of the danger is known—bodily injury, not death or serious bodily injury. Any other danger would be hypothetical based on facts not present here." *Id.* at 655. From these premises, the court of appeals concluded: "To uphold the [deadly weapon] finding on this record would effectively be holding that evidence of a rear-end collision, by itself, establishes in every case that a vehicle was used as a deadly weapon." *Id.* Accordingly, it ordered that the finding be deleted from the judgment. *Id.*

We think that the court of appeals in this case focused too acutely on what was *not* in evidence and not enough on the reasonable inferences a fact-finder could have drawn from what *was*.

## ANALYSIS

■ In *Mann*, there was scant evidence of the manner of the defendant's driving before he was pulled over. The arresting officer observed the defendant first drive briefly up onto the curb, and then continue driving in a straight line through a gentle curve in the roadway, nearly causing a head-on collision. *Mann*, 13 S.W.3d at 91. We nevertheless adopted the Austin Court of Appeals' conclusion that the deadly weapon finding was "sound." *Mann*, 58 S.W.3d at 132. The facts of the instant case are in some ways even more compelling than those that we found readily supportive of the deadly weapon finding in *Mann*.

It is true that there are many things that the record in this case does not reveal. We do not know precisely how fast Appellant was driving his SUV before he struck Koen's BMW. Neither can we tell what the manner of Appellant's driving had been even seconds before the accident. We do not know for sure that he altogether failed to apply his brakes before the

collision. Other than the BMW and the white SUV, we do not know for certain how many "other cars" were in the vicinity (though we know there were some). For all of that, this is not a case in which, in order to find sufficient evidence of a deadly weapon, we must infer reckless or dangerous driving from the unadorned fact that Appellant rear-ended another vehicle, as the court of appeals believed. 508 S.W.3d at 655. This record reveals far more potential for danger than that.

Appellant was driving his car in a state of intoxication that was almost three-and-a-half times the legal limit.[5] The collision occurred at 6:30 p.m. on a Monday, at a red light on the service road of a highway. While we know nothing of the manner of Appellant's driving prior to his causing the accident, we can infer that he was going fast enough that the impact caused a chain reaction of collisions that ultimately pushed the white SUV into the intersection, and at a time when cars in the intersecting roadway had the right-of-way. A fact finder could readily find that there was an actual danger that the white SUV would be broad-sided, much like the other driver's car was in *Sierra*.[6] Appellant evidently either failed to apply his brakes altogether, or applied them too late to

---

**5.** This Court has previously suggested that evidence that a defendant was driving while intoxicated does not by itself definitively establish that he was using his vehicle as a deadly weapon in every case. *See Brister*, 449 S.W.3d at 495 (refusing to adopt a per se rule requiring courts to make a deadly weapon finding in every case in which the defendant drives while intoxicated). But that does not make the fact of the defendant's intoxication wholly irrelevant to the determination of whether he was driving in a reckless or dangerous manner. And the more intoxicated the defendant was, the more probative it will be of the actual danger his driving posed to the public.

**6.** In its analysis of the capability of Appellant's car to cause actual, as opposed to mere-

ly hypothetical, danger of death or serious bodily injury, the court of appeals failed to account for the fact that the secondary collision pushed the white SUV into the intersection. The court of appeals observed that there was nothing in the record to suggest that the fact that Koen and her daughter suffered only "minor injuries" in the BMW was "miraculous[.]" *Moore*, 508 S.W.3d at 654. After all, their car was not pushed into the intersection, in which the cross traffic had the right of way. But the white SUV *was* pushed out into the intersection, and the fact that it was able to avoid *another* collision was indeed fortunate—or, at least a rational fact-finder could have found it so, given the circumstances.

avoid a substantial impact—even as he approached an intersection with a red light and at least two cars idling in the lane in front of him. A rational fact-finder might even infer from these circumstances that, had there been no cars idling at the red light on the service road to halt Appellant's momentum, he might have been unable to stop, with the very real potential for colliding with another car moving across the intersection.

We conclude that a rational fact-finder could infer that Appellant was using his motor vehicle in this case in a manner that was capable of causing death or serious bodily injury, even though it did not do so, and regardless of whether he intended it

to. It does not amount to speculation for us to conclude that there was more than "a hypothetical potential for danger if others had been present." *Mann*, 13 S.W.3d at 92; *see also Sierra*, 280 S.W.3d at 254 (quoting *Mann*). Here, others *were* present, including the driver of the white SUV, and the manner in which Appellant used his motor vehicle placed those others in substantial danger of death or serious bodily injury, even if none of them was actually seriously hurt.[7] While there is no evidence of a potential collision quite as devastating as the head-on near-miss in *Mann*, the danger of such a dire collision is evident on the facts of this case.[8] The court of appeals should not have concluded otherwise.[9]

---

7. *Cf. Pruett v. State*, 510 S.W.3d at 929 (holding that a fire that was intentionally set in a residential neighborhood with an accelerant was a deadly weapon despite the fact that it was quickly extinguished, observing that "the capability of the fire to cause death or serious bodily injury is not obviated by the fact that neighbors decided to take a water hose to the burning house or that firefighters showed up and did their job").

8. Even an "actual" danger is just a potentiality. *See* BLACK'S LAW DICTIONARY 476 (10th ed. 2014) (defining "danger" as "[p]eril; *exposure* to harm, loss, pain, or other negative result") (emphasis added). The difference between an actual "exposure" to death or serious bodily injury and a hypothetical "exposure" to such an injury is necessarily only one of degree. Here, the manner of Appellant's use of his motor vehicle substantially "exposed" the driver of the car he struck, and the driver of the car he caused her to strike (if not others as well), to death or serious bodily injury. Even though he did not actually cause those results, the exposure was more than merely hypothetical.

9. The court of appeals also rejected the proposition that the evidence established that the manner of Appellant's use of his automobile was reckless. *Moore*, 508 S.W.3d at 652-53. "[T]his is a case[,]" the court of appeals observed, "where the evidence showed Appellant might have been reckless or might have been criminally negligent, with no rational basis for deciding he was one or the other

beyond a reasonable doubt." *Id.* at 652. The assumption underlying this reasoning is that the evidence must show that the manner of Appellant's use of his vehicle was at least reckless (aware of but consciously disregarding the risk), or else Section 1.07(17)(B)'s definition of deadly weapon would not be satisfied. Mere criminal negligence (unaware, but should have been aware, of the risk), would not suffice. The State argues that the court of appeals was mistaken to believe that a formal culpable mental state of *any* degree must attach to the determination whether an implement was, in the manner of its use or intended use, capable of causing death or serious bodily injury. *See* TEX. PENAL CODE § 6.03(c) & (d) (defining the culpable mental states of recklessness and criminal negligence, respectively); *see also Sierra*, 280 S.W.3d at 255 (citing *Walker*, 897 S.W.2d at 814, for the proposition that "no intent to use the automobile as a deadly weapon need be shown"). We need not resolve this question today. Nor need we decide whether the court of appeals was correct to conclude that a single failure to heed a traffic signal is insufficient to differentiate reckless from criminally negligent driving. *Moore*, 508 S.W.3d at 651. As the court of appeals recognized, a fact-finder may find that the manner of the use of an automobile is capable of causing serious bodily injury or death so long as it is reckless *or* dangerous. *See id.* at 653 ("If the evidence is insufficient to show Appellant drove in a reckless manner, the deadly weapon finding would still be proper if the evidence showed

## CONCLUSION

We reverse the court of appeals' judgment to the extent that it deleted the deadly weapon finding, and we reinstate the original, unmodified judgment of the trial court.

Walker, J., filed a dissenting opinion.

Newell, J., concurred in the result.

Alcala, J., dissented.

Keasler, J., did not participate.

Walker, J., filed a dissenting opinion

The Court finds today that the rear-end collision by Appellant constitutes the use of a deadly weapon in the commission of felony DWI. Because I disagree with the Court's decision, because I believe the Court of Appeals correctly analyzed Appellant's argument, and because I would affirm the lower Court's decision, I must dissent.

The majority's analysis begins by disapproving of the Court of Appeals's opinion by stating: "We think that the court of appeals in this case focused too acutely on what was *not* in evidence and not enough on the reasonable inferences a fact-finder could have drawn from what *was*." Frankly, the majority does precisely what it scolds the Court of Appeals for doing. In doing so, the majority acknowledges that "there are many things that the record in this case does not reveal," including how fast Appellant was driving, in what manner he was driving seconds before the collision,

whether Appellant applied his brakes before the collision, or how many other cars were in the vicinity. Nevertheless, the majority finds that "[a] fact finder could readily find that there was an actual danger that the white SUV would be broadsided" and that "the danger of such a dire collision is evident." The majority surmises: "It does not amount to speculation for us to conclude that there was more than 'a hypothetical potential for danger if others had been present.'"

With all due respect, I must point out that the majority is engaging in exactly that: speculation about a hypothetical danger if, and supposing, others had been present. Undoubtedly, there were two other vehicles present: the white SUV and the BMW driven by the witness. Yet, the majority finds additional "others" to be present in order to find a danger of a broadside collision–namely, cross-traffic on Dove Road–although there is no mention anywhere in the record about any cross-traffic.[1] Even so, the majority finds that the rear-end collision placed the white SUV in "substantial danger." How could the white SUV be in "substantial danger" if there was not any cross-traffic, and there is certainly no evidence in the record establishing that there was cross-traffic.

This is totally speculative. The majority focuses "too acutely" on a danger of broadsiding that is not in evidence. It assumes, without pointing to *anything* in the record, that there was cross-traffic on Dove Road at the time of the collision. No witnesses testified about cross-traffic on Dove Road.

---

he drove in a dangerous manner. *See Sierra*, 280 S.W.3d at 255-56."). For the reasons given in the text, we do not hesitate to conclude that the evidence supports a finding that Appellant drove in a dangerous manner.

1. There may have even been more vehicles present: in response to a question on cross-examination about if there were other cars, the driver of the BMW responded "Uh-huh."

But this response is ambiguous at best. Assuming that it does not include the white SUV, the BMW, and Appellant's vehicle, it does not indicate anything about the other cars, such as how many there were, where they were located, or what direction they were headed, much less establish that the other cars were cross-traffic on Dove Road.

**915**

The testimony, from the only fact witness, *only* revealed that she was stopped at a red light behind a white SUV and was struck from behind by Appellant's vehicle. She was pushed into the white SUV, which itself was pushed into the intersection. The white SUV then proceeded across the intersection and pulled over on the other side with its flashers on. Why would the driver of the white SUV choose to proceed across the intersection if, indeed, there had been cross-traffic? There was no testimony about exactly how far the white SUV was pushed into the intersection. It could have been six feet. It could have been six inches. There was no testimony about cross-traffic, no testimony about the honking of horns, and no testimony about other cars swerving out of the way of the white SUV. The record is silent. The testimony was that two vehicles were stopped. A third, Appellant's, hit the second. There are no others. While this does not prove that the majority's supposed broadside danger did not exist, neither does it prove that there *was* a broadside danger. Dove Road could have had no cross-traffic or it could have been closed to traffic on that date, at that time, for all we know.

What the evidence actually showed was that there was a rear-end collision. In addition, no one was seriously hurt, aside from bruises, scratches, soreness, and emotional problems. All that remains, and all that the majority seizes upon, is a hypothetical "substantial danger." The majority considers the facts of this case as showing more evidence of a deadly weapon than in *Mann v. State*, 13 S.W.3d 89 (Tex. Crim. App. 2000), but they ignore an important fact about *Mann*. In *Mann*, an officer actually testified about the potential for danger. *Id.* at 91. He stated that, given the circumstances of that case, the defendant's vehicle could have caused serious injury or death. *Id.* This opinion testimony was dispositive in the Court's decision when the Court found that the testimony showed a collision under the circumstances of that case was capable of causing death or serious bodily injury. *Id.* at 92. There is no such testimony here from an officer, from the driver of the white SUV, or the only fact witness, the driver of the BMW. The majority assumes a "substantial danger," without any supporting evidence, that there was cross-traffic.

Finally, I note that the Court's decision today turns the burden of proving a deadly weapon on its head. Instead of requiring the State to put forth evidence that the white SUV really was in danger of being broadsided, perhaps by having the white SUV's driver come to testify, by having one of the responding officers testify about traffic conditions, or by simply asking the BMW driver herself what cross-traffic was like, the majority's approach here is tantamount to requiring Appellant to *disprove* the existence of any broadside danger. A deadly weapon must be proved, and that burden rests upon the State. We cannot require a defendant to disprove one.

In conclusion, the Court of Appeals correctly found no support in the record for the deadly weapon finding, and I would affirm the lower Court's decision. Because the Court does not do so, I respectfully dissent.