**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00237-CR**
_____

**SHAWN RAY EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 17-06-07753-CR**
_____

**MEMORANDUM OPINION**

Shawn Ray Evans appeals his conviction for felony driving while intoxicated. *See* Tex. Penal Code Ann. §§ 49.04, 49.09(b). Evans did not file a notice of appeal following his conviction, but later filed a petition for writ of habeas corpus and was eventually granted an out-of-time appeal by the Court of Criminal Appeals. *See Ex Parte Evans*, No. WR-92,783-01, 2021 WL 3177721 (Tex. Crim. App. July 28, 2021). In two issues, Evans argues the evidence was legally insufficient to support the trial court's deadly weapon finding, and that his trial counsel rendered ineffective

1

assistance of counsel by failing to argue the deadly weapon issue to the court. As discussed herein, we affirm the trial court's judgment.

BACKGROUND

In an open plea, Evans pleaded guilty to the offense of felony driving while intoxicated. His blood alcohol content after his arrest was 0.146, almost twice the legal limit. The indictment alleged that during the commission of the offense, Evans used a deadly weapon, namely a motor vehicle. Evans waived the reading of the indictment and pleaded guilty "as charged in the indictment."

The trial court conducted a punishment hearing. No witnesses testified for the State, but the trial court admitted Evans's previous criminal history, which showed that he had three previous convictions for driving while intoxicated. The trial court also took judicial notice of the pre-sentence investigation report, which contained an offense report from Trooper Christopher Lucchesi. Lucchesi's report notes that on the night of the offense, he arrived on scene and observed a vehicle had struck a tree. The driver, later identified as Evans, was trapped in the vehicle and emergency personnel were working to free him. Deputy Cantu, who was the first deputy on scene, advised Lucchesi that Evans smelled of alcohol and was the vehicle's only occupant. The damage to the vehicle was "major, indicating the vehicle struck the tree at a high rate of speed." As Evans was loaded into the ambulance, he was overheard saying that he had a passenger, which police did not find.

2

The next day, Lucchesi interviewed Evans at the hospital, and Evans stated he was not the driver. When Lucchesi asked Evans how he became pinned in the driver seat, Evans explained that after the crash, he slid into the driver seat to turn off the vehicle and take the keys out of the ignition. Lucchesi advised Evans that the front of the vehicle was destroyed so there would have been nothing to turn off. Evans maintained that he was the passenger and got stuck after getting in the driver seat. Evans stated that Jesse Steel was the driver and that he lived near the crash scene.

Lucchesi identified Steel and found an address for him which was very close to where the crash occurred. Lucchesi told Steel that Evans was in a major crash the night before and Evans named Steel as the driver. Steel told Lucchesi that he was unaware of the crash and was not the driver, and he explained that Evans was at his house the night of the crash. According to Steel, Evans arrived at his house around 7 p.m. with a drink in his hand, and they hung out for a while, drove to the store together to get beer, and then went back home. Steel stated that Evans left his home around 10:30 p.m. Lucchesi asked Steel to step in front of his patrol car camera and take his shirt off. Steel had no injuries on his body or head, which according to Lucchesi's report, disproved Evans's story that Steel was the driver. Steel also submitted a voluntary written statement that Evans left his house intoxicated between 10 p.m. to 10:30 p.m. driving a blue Tahoe. Two weeks later, Lucchesi

spoke with Evans by phone, and Evans told Lucchesi that he was the driver and Steel was the passenger.

Four witnesses testified for the defense at the punishment hearing: Sharolyn Hall; Steve McKeon; Louise Evans; and Evans.

Louise Evans, Evans's mother, testified that Evans suffered head trauma and experiences memory-related problems because of the accident. When asked about the accident, Louise testified:

Q: He had an accident?

A: It was a bad one. Thank God it didn't involve any other cars.

Q: I was about to say you understand that as bad as it is, it could have been worse?

A: Oh yes. As it was, he died three times that night.

Q: When you indicate that, what exactly are you referring to? He was taken to the hospital?

A: No, they had to revive him and bring him back when he was pinned in the car – or in his, well, truck. I don't know what you call it, an SUV. And twice on the way to the hospital from what they told me….

When asked on cross-examination about the accident, Louise told the prosecutor:

Q: And something stood out to me. You said, "Thank God it didn't involve other cars," right?

A: Yes.

Q: Because it was a bad accident?

4

A: Yes.

Q: His car crashed into a tree?

A: Uh-huh.

Q: If someone else had been there, who knows what could have happened; is that fair?

A: Yes.

Steve McKeon, Evans's brother, acknowledged that Evans had a long history of driving while intoxicated and this was his fourth offense. He testified that Evans has been unable to work since this incident and was still wearing a halo medical device.

Evans testified that his last memory of the night of the accident was going to the restroom and taking two sips of his drink. When Evans's attorney asked him about whether he had a passenger in his vehicle the night of the accident, Evans stated that he was, and that Steel had fled the scene.

During closing, Evans's attorney asked the court for a probated sentence, or in the alternative, a shorter prison sentence because of his physical condition. The State argued for the maximum sentence. In discussing the incident which led to the charges, the State argued:

> On May 6th, 2017, as his mother said, we thank God no other cars were on the road that day. And if the only person who was negatively affected by the defendant's choice was him, the question we now have to ask ourselves is are we willing to give him another chance to run the

5

risk that the next time he does this he's not the only person on that road and that other members of our community could be there and affected by his choices to drink and consume pills.

The trial court sentenced Evans to fifteen years in prison. The trial court then stated on the record that it was making an affirmative finding of a deadly weapon in the case.

While Evans did not initially file a notice of appeal, he did file a First Amended Application for a Writ of Habeas Corpus under article 11.07 of the Texas Code of Criminal Procedure. The habeas case was submitted to the Court of Criminal Appeals for consideration. *See Ex parte Evans*, 2021 WL 3177721, at *1. The Court of Criminal Appeals found that trial counsel was ineffective in failing to advise Evans of his right to appeal the sentence and granted relief as to Evans's right to file an out-of-time appeal. *See id.* In a footnote, the Court of Criminal Appeals found that the remaining complaints raised in the petition were "without merit." After the Court of Criminal Appeals issued its opinion, Evans filed a Motion for New Trial, alleging the evidence was legally insufficient to support the deadly weapon finding. The trial court denied the Motion for New Trial. Evans filed his Notice of Appeal.

## ANALYSIS

In issue one, Evans complains that the evidence was legally insufficient to support the trial court's deadly weapon finding. The State argues that the evidence was legally sufficient to support the finding because Evans testified for the defense

at the sentencing hearing and during his testimony Evans said that he had a passenger who fled the scene the night of the accident and because the pre-sentence investigation report contains similar information.

"[T]raditional standards [of review] do not apply to non-capital felony cases when the defendant enters a plea of guilty or nolo contendere." *Tijerina v. State*, 264 S.W.3d 320, 322 (Tex. App—San Antonio 2008, pet. ref'd) (citing *Ex parte Martin*, 747 S.W.2d 789, 791 (Tex. Crim. App. 1988), and *Ex parte Williams*, 703 S.W.2d 674, 682 (Tex. Crim. App. 1986)). Under article 1.15 of the Texas Code of Criminal Procedure, the State is required to introduce evidence into the record to support the guilty plea. *Tijerina,* 264 S.W.3d at 323; *see* Tex. Code Crim. Proc. Ann. art. 1.15. "The statute expressly provides that the defendant may consent to the proffer of evidence in testimonial or documentary form, or to an oral or written stipulation of what the evidence against him would be, without necessarily admitting to its veracity or accuracy; and such a proffer or stipulation of evidence will suffice to support the guilty plea so long as it embraces every constituent element of the charged offense." *Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009); *see also* Tex. Code Crim. Proc. Ann. art. 1.15. For instance, a judicial confession that covers all the elements of the charged offense is sufficient to support a guilty plea. *Id.* "However, a stipulation of evidence or judicial confession that fails to establish every element of the charged offense will not authorize the trial court to convict." *Id.*

7

A deadly weapon is anything that "in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B). "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (citation omitted); *see Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017). To establish a deadly weapon finding, the State must establish that: (1) the object meets the statutory definition of a dangerous weapon; (2) the weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were actually endangered. *Drichas*, 175 S.W.3d at 798 (citations omitted); *Brister*, 414 S.W.3d at 342.

"To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually *caused* death or seriously bodily injury; only that 'the manner' in which it was either used or intended to be used was '*capable*' of causing death or serious bodily injury." *Moore*, 520 S.W.3d at 908 (emphasis in original). "Nor does the plain language of the provision require that the actor actually intend death or serious bodily injury." *Id.* (citations omitted). "To sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical danger if others had been present." *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). "A deadly-weapon finding is justified if a

rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury." *Brister*, 414 S.W.3d at 342 (citation omitted). "Therefore, we examine the record for evidence demonstrating that others were present when the reckless driving occurred." *Id.* at 343.

The record reflects that Evans signed "Waivers, Consent, Judicial Confession & Plea Agreement" whereby Evans swore that:

> I JUDICIALLY CONFESSES [sic] to committing the offense of: DRIVING WHILE INTOXICATED SUBSEQUENT OFFENSE as charged by the indictment or information or as a lesser-included offense to the offense charged in the indictment or information. If the information or indictment is amended, I further waive my notice requirements.

Moreover, the indictment alleges that "during the commission of the primary offense alleged above, the Defendant did then and there use or exhibit a deadly weapon, to-wit: a motor vehicle[.]" In the hearing on his plea, the record shows that Evans pleaded guilty to the charge of felony driving while intoxicated.

By swearing that the allegations in the indictment were true, Evans judicially confessed to using a motor vehicle as a deadly weapon. *See Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1979); *Tijerina*, 264 S.W.3d at 324. "It is well settled that a judicial confession standing alone, is sufficient to sustain a conviction upon a guilty plea." *Potts v. State*, 571 S.W.2d 180, 182 (Tex. Crim. App. 1978).

Evans argues that the evidence is not sufficient to sustain the conviction because the only evidence that another person was around Evans was his own

indirect statement that Steel was present. Both during the sentencing hearing, and as noted in the PSI, Evans told the officers that another person, Steel, was in his vehicle at the time of the accident. That evidence was before the trial court at the time it made the deadly weapon finding. That said, even without such evidence, under well-settled Texas law the judicial confession is sufficient to meet the requirements of article 1.15 and to sustain the conviction. *See Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996); *Tijerina*, 264 S.W.3d at 324. We therefore overrule Evans's first issue on appeal.

In Evans's second issue, he complains that his trial counsel was ineffective by failing to argue the deadly weapon issue during the sentencing hearing. To establish a claim of ineffective assistance of counsel, the defendant must satisfy a two-prong test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

When the defendant alleges he received ineffective assistance, the claim "must be firmly founded in the record, and the record must affirmatively

10

demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In our review, we must presume "that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Given the presumption that the defendant received effective assistance of counsel, the record on appeal is often not sufficiently developed to allow an appellate court to determine whether the attorney represented the defendant in a manner so deficient and lacking that the representation as unreasonable or unprofessional. *Id.* "Under *Strickland*, the defendant must prove, by a preponderance of the evidence, that there is in fact, no plausible professional reason for a specific act or omission." *Id.* at 836.

Here, the record before us fails to affirmatively demonstrate that no plausible reason exists to explain why Evans's attorney did not argue the deadly weapon issue during the sentencing hearing. The record before us shows that Evans judicially confessed to the offense in the indictment which alleges that Evans used a motor vehicle as a deadly weapon.

The bottom line is that claims of ineffective assistance "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813. The record lacks sufficient information to support Evans's complaint, and we conclude Evans has not overcome

11

the strong presumption that his attorney provided him effective assistance during his trial. *Id.* at 814. Evans's second issue is overruled.

Having overruled Evans's two issues, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on March 8, 2023
Opinion Delivered August 30, 2023
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

12