

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00327-CR

JOHN EDWARD HOPPER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Donley County, Texas
Trial Court No. 4204, Honorable Stuart Messer, Presiding

October 7, 2024

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant, John Edward Hopper, was convicted by a jury of intentionally fleeing from police officer Brian Stevens while using a deadly weapon—an automobile. He was sentenced to ten years of confinement, which was suspended in favor of ten years of community supervision with conditions. On appeal, Appellant raises three issues: (1) the State's evidence is insufficient to support his conviction; (2) the trial court erred by admitting character evidence in violation of Rule 404(b) of the Texas Rules of Evidence;

and (3) the court erred in finding that the probative value of the evidence substantially outweighed its prejudicial effect under Rule 403.  We affirm the trial court's judgment.

## Background

On August 2, 2022, Deputy Brian Stevens was driving east on US 287 near Clarendon, Texas, when he observed a black SUV heading west at 98 miles per hour in a 75 mile per hour zone.  Stevens made a U-turn and began pursuit.  When he closed to within a car length of the SUV, he activated his overhead lights but received no response. He then activated his siren as both vehicles continued at speeds between 98 and 100 miles per hour.

During the pursuit, the vehicles approached a semi-tractor trailer in the left lane. Appellant slowed to match the truck's speed.  Once the truck moved to the right lane, Appellant accelerated again, exceeding 100 miles per hour, with Deputy Stevens in pursuit.

From his patrol car, Deputy Stevens could "clearly see" the driver repeatedly looking at him through the driver-side mirror.  Stevens had "no doubt" that Appellant was aware of the pursuit.  As they sped down US 287, other vehicles either remained in the right lane or moved onto the shoulder.

Deputy Stevens then pulled alongside the SUV and noticed what appeared to be a child in the backseat behind the driver.  When he motioned for Appellant to pull over, Appellant "looked at [him] and waved."  The deputy moved closer to the SUV, attempting to pressure Appellant into slowing down and stopping.  Appellant eventually veered onto

the shoulder at over 100 miles per hour, continuing for another half mile before coming to a stop.

Deputy Stevens approached the SUV and instructed Appellant to turn off the ignition. Appellant refused, lowered his window about an inch, and shoved a piece of paper through the crack, stating the deputy "had been served." To deescalate the situation and prevent Appellant from driving off, Deputy Stevens waited for backup to arrive, while the SUV remained running.

The paper stated Appellant was giving Deputy Stevens "notice as a courtesy" that he was "an American State National, with limited Diplomatic Immunity." The paper was intended to "serve" as notice that Appellant "would not be interrogated, detained, or molested in any way, nor . . . accept any offers [the deputy] may make to contract." Appellant refused to lower his window further or provide any identification to Deputy Stevens.[1]

Donley County Sheriff Butch Blackburn testified that upon arriving at the scene, he identified himself and instructed Appellant to exit the SUV. When Appellant refused, Sheriff Blackburn used an expandable metal baton to break the front-passenger window. Before doing so, he warned the child in the backseat to cover his face. After breaking the window, the sheriff unlocked the door, removed Appellant from the SUV, and placed him under arrest.

---

[1] While Deputy Stevens stood outside the SUV, the young boy in the backseat rolled down his window. In response, Appellant "frantically started trying to get the window up . . . and he locked—looked like he locked the windows."

3

During his defense, Appellant testified that he identifies as an American State National. He claimed that this status exempts him from posted speed limits when "privately traveling," as he believes they apply only to commercial vehicles. He further asserted that he possesses a form of diplomatic immunity, arguing that "unless there is an injured party, no crime has been committed." Appellant also testified that, in his view, when "a law enforcement officer is acting in their capacity as an employee of a corporation, then a ticket is a contract offer."

Appellant testified that before being stopped by Deputy Stevens, he was aware he was exceeding the posted speed limit. He stated he was returning to Denver and planned to arrive home later that night. Appellant claimed he did not notice Deputy Stevens behind him until the deputy pulled alongside the SUV. He testified that during the pursuit, he had adjusted his rearview mirror to watch his son in the backseat and encourage him to eat. Additionally, Appellant testified that he was on a phone call, listening through earbuds, while driving. He stated, "[s]o I was driving safely, but, yes, I had two other things going on other than completely just focusing on the road." On cross-examination, he also denied seeing Deputy Stevens's overhead lights flashing.

During the jury charge conference, both parties indicated they had no objections to the court's charge. In closing arguments, Appellant argued that he was not intentionally fleeing from law enforcement but was merely distracted and unaware of Deputy Stevens during the pursuit. Thereafter, Appellant was convicted of intentionally fleeing from Deputy Stevens while using a deadly weapon—an automobile—during a lawful attempt to arrest or detain him.

4

**Analysis**

First Issue: Sufficiency of the Evidence

On appeal, Appellant argues that the State's evidence is insufficient to support his conviction for evading arrest or detention while using a motor vehicle as a deadly weapon. Due process requires the State to prove each element of the charged crime beyond a reasonable doubt. *Cada v. State*, 334 S.W.3d 766, 772–73 (Tex. Crim. App. 2011). When conducting a sufficiency review, courts must view the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found each essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 806 (Tex. Crim. App. 2010). The jury is responsible for judging the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

a. Evading arrest or detention

To sustain Appellant's conviction for evading arrest or detention, the State must prove that Appellant intentionally fled from Deputy Stevens, knowing that he was a peace

5

officer lawfully attempting to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a).[2] To support the deadly weapon finding, the evidence must prove Appellant used his SUV during the evasion in a manner capable of causing death or serious bodily injury, and that his actions placed others in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

At trial, the evidence demonstrated that Appellant was driving his SUV on US 287 at speeds ranging from 98 to 100 miles per hour in a 75-mile-per-hour zone. Despite Deputy Stevens activating his overhead lights and siren when he was within a car length of the SUV, Appellant looked at the deputy but continued to drive. The pursuit extended for three-to-four miles before Appellant finally pulled onto the shoulder at 100 miles per hour, stopping approximately half a mile later.

Appellant argues that this evidence is insufficient because the pursuit lasted mere minutes, he pulled over when Deputy Stevens pulled alongside his SUV, and his mirrored sunglasses would have prevented the deputy from seeing where he was looking in the side-view mirror. However, we defer to the jury's role in resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts. *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). "We may not reweigh or substitute our judgment for that of the factfinder." *Id.* After reviewing the record, we conclude that the jury could have reasonably found each essential element of the offense beyond a reasonable doubt.

---

[2] Section 38.04 "punishes those who refuse to submit to lawful authority at the moment an officer attempts an arrest or detention by adding an additional penalty for that refusal to comply." *Day v. State*, 614 S.W.3d 121, 127–28 (Tex. Crim. App. 2020).

b. While using a deadly weapon

In challenging the sufficiency of the State's evidence for the deadly weapon finding, Appellant primarily argues that there is no evidence he was driving erratically, nearly caused a collision, or was swerving in and out of traffic. He also notes that he did not exceed 100 miles per hour, the police did not attempt a "PIT" maneuver,[3] and he made no furtive movements.

An automobile can be deemed a deadly weapon if it is used in a manner capable of causing death or serious bodily injury to others. *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). The State does not need to prove that the actor actually intended to cause death or serious bodily injury; it is sufficient if "the actor intends a use of the object in which it would be capable of causing death or serious bodily injury." *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *see Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

In this case, the State's evidence shows that Appellant was intentionally driving his SUV at least 25 miles per hour over the posted speed limit. He was driving in the early afternoon with other vehicles, including semi-tractor trailers, present on the road. His son was in the backseat. Appellant testified at trial that he was distracted while driving, and according to his testimony would indicate he was (1) participating in a phone call, (2) using earbuds, and (3) helping his son eat lunch by watching him through the rearview

---

[3] The Precision Immobilization Technique (PIT) is a controlled law enforcement maneuver where an officer applies lateral force to the rear quarter panel of a fleeing vehicle, causing it to abruptly turn 180 degrees, stall, and stop. *See* https://www.ojp.gov/ncjrs/virtual-library/abstracts/studying-how-maneuver-suspects-stop.

7

mirror, which was directed away from traffic. Appellant admitted he was so distracted by these activities that he failed to notice a police cruiser within a car length of him with its lights and siren activated.

But that was not all the evidence presented. At trial, Deputy Stevens testified that the five-minute chase was "extremely dangerous," emphasizing the presence of other vehicles on the road. Donley County Sheriff Butch Blackburn also provided key testimony.

> STATE: How long does it take of distraction or not paying attention or looking at a phone or something like that before—Based on your training and experience, for an accident to happen when you're focusing—
>
> [objection is overruled]
>
> STATE: Going the speed limit, how long does it take?
>
> BLACKBURN: It's a split second.
>
> STATE: Based on your training and experience, whenever your deputies are pursing someone that won't give up out here on 287, does it matter whether the chase takes two minutes or 15 seconds when you're going over 100 miles an hour?
>
> BLACKBURN: No.
>
> STATE: Is there still plenty of opportunity in there for it to go horribly wrong and somebody to get hurt?
>
> BLACKBURN: Yes, sir, very wrong. It's more deadly, I would say, than shooting a rifle down the highway, because you're more apt to hit something with a 7,500-pound vehicle.
>
> STATE: Based on your training and experience, can a vehicle running 100 miles an hour flee the police and be used as a deadly weapon?
>
> BLACKBURN: Very much so.
>
> STATE: Who is the recipient of that threat? Who is it deadly towards?

BLACKBURN: Everybody. The public. Anybody on the highway could be a potential victim. The suspect, whoever's in his vehicle and whoever's pursuing him.

We conclude that a rational factfinder could infer that Appellant was using his vehicle in a manner capable of causing death or serious bodily injury, and that his actions placed others in actual danger. Considering the time of day, the traffic on the highway, the speed at which Appellant was driving with his son in the car, the compromised visibility due to his rearview mirror being directed away from traffic, and the multiple distractions during the high-speed chase, we find that any rational trier of fact, viewing the evidence in the light most favorable to the verdict, could have found the necessary elements for a deadly-weapon finding. Accordingly, Issue One is overruled.

Second and Third Issue: Admission of Evidence

In his next two issues, Appellant argues the trial court erred in admitting evidence that he identifies as an American State National, contending it constituted improper character evidence under Rule 404(b) of the Texas Rules of Evidence and was more prejudicial than probative under Rule 403. We disagree.

We review a trial court's decision to admit or exclude evidence for abused discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Rule 404(b) prohibits using evidence of extraneous conduct during the guilt-innocence phase to prove a defendant committed the charged offense in conformity with bad character. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). However, extraneous offense evidence may be admissible if it has relevance apart from character conformity, such as to rebut a defensive theory. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App.

9

2009).  Rule 404(b) also allows evidence of prior wrongs or bad acts for other purposes, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Tex. R. Evid. 404(b)(2).

The offense of evading arrest or detention "requires intentional flight from an officer "attempting lawfully to arrest or detain."  *Day v. State*, 614 S.W.3d 121, 123 (Tex. Crim. App. 2020) (mem. op.).  Appellant's primary defense at trial was that he did not intend to evade detention or arrest by Deputy Stevens.  He claimed he did not see the deputy until the deputy pulled alongside his car, after which he immediately pulled onto the shoulder.[4] Evidence that Appellant believed he was immune from prosecution for speeding and his subsequent failure to cooperate with officers during his arrest was relevant to rebut Appellant's claims because it provided an alternative explanation for his decisions, i.e., that he recognized Deputy Stevens as a law enforcement officer and chose not to stop or heed the officer's instructions.  In other words, evidence of Appellant's refusal to cooperate with officers attempting to detain or arrest him constitutes "same transaction contextual evidence" necessary to fully describe the context of the evading arrest offense. *Nash v. State*, No. 07-18-00187-CR, 2019 Tex. App. LEXIS 9791, *11–12 (Tex. App.—Amarillo Nov. 7, 2019, pet. ref'd).

Rule of Evidence 403 permits the exclusion of relevant evidence if its probative value is "substantially outweighed" by the risk of unfair prejudice.  TEX. R. EVID. 403. However, any alleged error in the trial court's admission is rendered harmless if the same

---

[4] Deputy Stevens testified that it was not until he began getting closer to Appellant's SUV in an attempt to make him think he was going to strike the SUV that Appellant pulled completely onto the shoulder.

10

evidence is later admitted without objection. *Aceituno-Urbina v. State*, No. 07-22-00205-CR, 2023 Tex. App. LEXIS 4262, at *3–4 (Tex. App.—Amarillo June 16, 2023, pet. ref'd) (mem. op.). In this case, both Appellant and his former spouse, Andrea Reitzel, testified extensively without objection about American State Nationalists and their beliefs.

Appellant also briefly complains about the trial court's admission of what appears to be a training video demonstrating how an American State Nationalist should respond during a traffic stop. At trial, counsel initially objected to the video's admission, but later requested that the entire video be played.[5] Any potential prejudice from the jury's viewing of the video was harmless, considering the content they saw and the other properly admitted evidence presented at trial. *See Broussard v. State*, 163 S.W.3d 312, 318 (Tex. App.—Beaumont 2005, no pet.).

The trial court's admission of this evidence did not constitute harmful error. Appellant's remaining issues are overruled.

## Conclusion

Having overruled all of Appellant's issues on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

---

[5] The State admitted only certain portions of the video and muted other portions.